```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
   GUALBERTO MORALES,                          :
                                               :
                               Plaintiff,      :
                                               :       14-CV-9276 (JPO)
                  -v -                         :
                                               :       OPINION AND ORDER
   THE CITY OF NEW YORK, JOHN                  :
   STOLTENBORG, and MIGUEL SANCHEZ in          :
   Their Individual Capacities and in Their Official :
   Capacities,                                 :
                                               :
                               Defendants.     :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

    Plaintiff Gualberto Morales brings this action pursuant to 42 U.S.C. § 1983, against Defendants the City of New York, and John Stoltenborg and Miguel Sanchez in their individual and official capacities. (Dkt. No. 12.) Morales alleges that Defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. On August 3, 2016, Defendants moved for summary judgment. (Dkt. No. 26.) For the reasons that follow, the motion for summary judgment is granted in part and denied in part.

**I.    Background**

    The following facts are taken from the parties' 56.1 Statement (Dkt. No. 40) and are undisputed except where otherwise noted. On March 11, 2013, at around 3:00 a.m., Defendants Stoltenborg and Sanchez, both police officers, were in the Bronx, New York. (*Id.* ¶ 2.) Stoltenborg and Sanchez encountered Morales and two others in front of a store and spoke with

them.[1]  (*Id.* ¶¶ 3-4.)  Less than half an hour later, Morales left to pick up his brother and Morales's friend, Chris, asked Morales to check on a firearm located on a car tire.  (*Id.* ¶¶ 5, 6.)

Morales walked over to the car to "peek" at the gun.  (*Id.* ¶ 7.)  At the same time, Stoltenborg and Sanchez returned to the area.  (*Id.* ¶ 8.)  From their vehicle, Stoltenborg and Sanchez observed Morales stand up from a kneeling position—here Defendants say "pop up"—on the other side of a parked car.  (*Id.* ¶ 9.)  Stoltenborg and Sanchez had not seen the gun at this point.  Morales was near the car, though the parties dispute exactly how near: Defendants say less than a foot, while Morales says six to seven feet.  (*Id.* ¶¶ 10-11.)  Stoltenborg and Sanchez pulled over to investigate.  (*Id.* ¶ 12.)  There was nobody else in the area of the car or on the sidewalk at the time.  (*Id.* ¶ 13.)

Defendants claim that when Morales saw them, he was by the car checking the firearm; Morales, meanwhile, claims that he was not next to the car, but rather "standing up by the building after peeking at the gun."  (*Id.* ¶ 14.)  The parties agree that Defendants did not see Morales place anything on the tire of the vehicle, and did not see him reach toward the tire of the car or touch any part of the vehicle.  (Dkt. No. 48 ¶¶ 37-41, 43-45.)  Stoltenborg then approached Morales, while Sanchez walked to the rear tire area of the vehicle.  (Dkt. No. 40 ¶¶ 15-16.)  At that point, Sanchez observed a gun sitting on the rear tire of the vehicle near where Morales had been seen standing up; further inspection of the firearm revealed that it was a semi-automatic loaded with one magazine, containing ten rounds of ammunition.  (*Id.* ¶¶ 17-19.)  Stoltenborg and Sanchez then arrested Morales.  (*Id.* ¶ 20.)  Stoltenborg and Sanchez conducted a pat-down search of Morales and did not find any drugs or contraband.  (Dkt. No. 48 ¶¶ 53-54.)

---

[1]  Morales claims that Stoltenborg and Sanchez also stopped and searched Plaintiff and his friends at this point. (Dkt. No. 40 ¶ 4.)  Defendants deny that they stopped and searched them, and also argue that it is not a material fact. (Dkt. No. 48 at 2.)

Stoltenborg and Sanchez handcuffed Morales and transported him to the 44th Police Precinct, where he was subjected to a strip search. (Dkt. No. 40 ¶¶ 21-23.) Defendants claim, though Morales denies, that a small bag of marijuana was recovered from his underwear. (*Id.* ¶ 24.) Morales was placed in a holding cell for a time and then was taken to another room where Stoltenborg and Sanchez questioned him. (*Id.* ¶ 25.) Morales informed them—and confirmed in a written statement—that he had known there was a gun on the car tire, as his friend had told him it was there, and had gone to the car to look at the gun. (*Id.* ¶¶ 27-29.) Morales was arrested on charges of criminal possession of a weapon in the second, third, and fourth degree, as well as unlawful possession of marijuana. (*Id.* ¶ 33.) On March 11, 2013, the criminal charges against Morales were dismissed. (Dkt. No. 48 ¶ 59.)

Morales initiated this action by filing a complaint on November 21, 2014, and filed an amended complaint on March 23, 2015. (Dkt. No. 1; Dkt. No. 12.) Morales raises six claims, all under Section 1983. Three claims, for false imprisonment, unlawful strip search, and malicious prosecution, are against Defendants Stoltenborg and Sanchez; the remaining three claims are for municipal liability against the City of New York. (Dkt. No. 12 ¶¶ 28-79.) On August 3, 2016, Defendants moved for summary judgment on all claims. (Dkt. No. 26.)

## II.   Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557

3

U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### III.   Discussion

#### A.   Qualified Immunity

Defendants argue that summary judgment should be granted on Morales's false imprisonment and malicious prosecution claims against Stoltenborg and Sanchez because the officers are entitled to qualified immunity. (Dkt. No. 27 at 11.)

Probable cause is a complete defense to an action for false arrest or malicious prosecution brought under Section 1983. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested *has committed or is committing a crime*." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" *Id.* (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)).

Even where probable cause may not actually exist, "[a]n officer is entitled to qualified immunity on such claims if he or she can establish that there was at least *arguable* probable cause to arrest or prosecute the plaintiff." *Barcomb v. Sabo*, 487 F. App'x 645, 647 (2d Cir. 2012) (emphasis added). "Arguable probable cause exists where either '(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

Morales was arrested for criminal possession of a weapon in the second, third, and fourth degree under New York Penal Law § 265.00 *et seq.* "A person is guilty of criminal possession of a firearm when he or she . . . possesses any firearm," N.Y. Penal Law § 265.01-b, where "possess" "means to have physical possession or otherwise to exercise dominion or control over tangible property," *id.* § 10.00(8).

Here, then, the question is whether it was objectively reasonable for Stoltenborg and Sanchez to believe that probable cause existed at the time they arrested Morales. More specifically, the question is whether it was *arguable* that "the officers ha[d] knowledge . . . sufficient to warrant a person of reasonable caution in the belief that" Morales exercised control over the firearm. *Gonzalez*, 728 F.3d at 155 (quoting *Weyant*, 101 F.3d at 852).

The parties disagree about two facts in the series of events at issue here: First, how far Morales was from the car and therefore, importantly, the gun (Defendants say Morales was less than a foot from the car when they approached him, while Morales says six to seven feet). Second, the manner in which Morales stood up from kneeling next to the car (Defendants say that he "pop[ped] up," while Morales just says he stood).

Even accepting Morales's version of the facts, there is enough to reasonably support a finding of arguable probable case. As a general matter, "[p]resence in a public place does not itself prove dominion and control over contraband," like the gun in the instant case, that was "discovered there." *People v. Pearson*, 75 N.Y.2d 1001, 1002 (N.Y. 1990). But control may exist where a defendant is sufficiently close to or responsible for the contraband at issue. *Compare People v. Dawkins*, 136 A.D.2d 726, 727 (N.Y. App. Div. 2d Dep't 1988) (finding that defendant had control of vials of cocaine found at her feet), *with People v. Russell*, 34 N.Y.2d 261, 264-65 (N.Y. 1974) (finding no probable cause where defendant was seen talking to others

at the driver's side of an automobile and contraband was later recovered "about three feet from the curb in an area under where the car had been parked").

According to Morales, at the time Stoltenborg and Sanchez arrested him, (1) it was around 3:00 a.m., (2) nobody else was in the vicinity, (3) the officers had seen Morales stand up from kneeling behind a car, (4) Morales was about six or seven feet away from the car, and (5) the officers then recovered a loaded gun from the rear tire of the car. (Dkt. No. 40 ¶¶ 9-11, 17-19.) Under the relevant standard, seeing Morales rise up from kneeling at the very location where the officers discovered a loaded firearm—with nobody else in the vicinity—is sufficient to arguably justify arresting him for possession. While greater proximity to the firearm (which Defendants claim was the case) would strengthen the likelihood that Morales controlled the gun, a distance of six to seven feet when coupled with Morales's rising from a kneeling position is sufficient to make it reasonable for Sanchez and Stoltenborg to believe that he possessed the firearm and that probable cause for arrest existed. Sanchez and Stoltenborg as thus entitled to qualified immunity on the false arrest claim.

The Court's finding of arguable probable cause for the purpose of the false arrest claim necessitates a determination that qualified immunity also applies to the malicious prosecution claim. *See Williams v. City of N.Y.*, No. 14 Civ. 7158, 2016 WL 3194369, at *6 (S.D.N.Y. June 7, 2016) (citing *Virgil v. Town of Gates*, 455 Fed. App'x 36, 39-40 (2d Cir. 2012); *Jean v. Montina*, 412 Fed. App'x 352, 354 (2d Cir. 2011)).

**B.    Strip Search**

Morales next challenges the lawfulness of the strip search to which he was subjected at the police precinct. (Dkt. No. 42 at 12-14.)

6

"The Fourth Amendment requires an individualized 'reasonable suspicion that [an] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest' before she may be lawfully subjected to a strip search." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (quoting *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986)). "This individualized 'reasonable suspicion' . . . need not rise to the level of probable cause, but it must be 'more substantial than [an] inarticulate hunch[ ].'" *Fate v. Charles*, 24 F. Supp. 3d 337, 346 (S.D.N.Y. 2014) (second and third alterations in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

Sanchez and Stoltenborg arrested Morales on the basis of his possession of a loaded semi-automatic handgun. Moreover, Officer Stoltenborg testified that he detected the odor of marijuana on Morales when he brought him in to the station. (Dkt. No. 29 Ex. B at 53.) Based on Morales's alleged crime and the odor of marijuana on his person, the officers had individualized, reasonable suspicion—much more than an inarticulate hunch—that he might be concealing additional contraband, sufficient to justify a strip search. *See Hartline*, 546 F.3d at 100.[2]

---

[2] Defendants argue that the more lenient standard announced in *Florence v. Board of Chosen Freeholders*, 132 S. Ct. 1510 (2012), which allows searches if "reasonably related to legitimate penological interests," *id.* at 1515 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)), should apply to the warrantless strip search of Morales here. However, courts in this Circuit have held that *Florence* does not apply to a discretionary search in a police station, as *Florence* arose in the context of searches conducted pursuant to general policies at correctional facilities. *See Fate v. Charles*, 24 F. Supp. 3d 337, 346 (S.D.N.Y. 2014); *see generally Florence*, 132 S. Ct. at 1517 ("[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."). In any event, the scope of *Florence* is not dispositive here as reasonable suspicion existed for the search of Morales.

### C. *Monell* Claims

Morales also alleges municipal liability against the City of New York. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

In their brief in support of the motion for summary judgment, Defendants note that they "do not believe that the issue of whether plaintiff has proffered sufficient evidence to establish a *Monell* claim is ripe for summary judgment at this time." (Dkt. No. 27 at 11 n.1.) Defendants seek to reserve the right to move for summary judgment on the *Monell* claims at a later date. (*Id.*) (On July 2, 2015, Magistrate Judge Pitman issued an Order bifurcating discovery and staying discovery relating to Morales's *Monell* claims. (Dkt. No. 16.))

A predicate to municipal liability under *Monell* is the existence of an underlying constitutional violation. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (per curiam). But the Court's conclusion that the individual named defendants, Sanchez and Stoltenborg, are shielded by qualified immunity does not foreclose municipal liability because municipalities do not enjoy the shield of qualified immunity. *Bonilla v. Jaronczyk*, 354 F. App'x 579, 582 (2d Cir. 2009). It thus remains theoretically possible for Morales to establish a constitutional violation that could form the basis for municipal liability.

Given this possibility, the Court follows Defendants' proposal and denies summary judgment as to the *Monell* claims at this point. Defendants will be permitted to move for summary judgment on these claims at a later date.

### IV. Conclusion

For the reasons discussed above, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Defendants retain the right to move for summary judgment on the remaining claims.

The Clerk of Court is directed to close the motion at Docket Number 26.

SO ORDERED.

Dated: December 20, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

9